UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

EARL BRYARS, III                                          CIVIL ACTION

v.                                                        NO. 11-72

IMPERIAL FIRE AND CASUALTY                                SECTION "F"
INSURANCE COMPANY

ORDER AND REASONS

Before the Court is Imperial Fire and Casualty Insurance Company's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

Background

This is a flood insurance coverage dispute in which Earl Bryars seeks to recover increased cost of compliance benefits following the elevation of his house.

Hurricane Katrina and its aftermath of flooding damaged Mr. Bryars' property, which is an elevated building on piers, located at 4510 Banks Street in New Orleans. The property, located in Flood Zone A-4, was insured under a National Flood Insurance Program Standard Flood Insurance Policy issued by Imperial Fire and Casualty Insurance Company, a Write-Your-Own Program carrier participating in the NFIP pursuant to the National Flood Insurance Act of 1968, as amended. The SFIP provided $160,000 in building coverage (Coverage A) and $10,000 in contents coverage (Coverage B); both amounts were subject to a $500 deductible.

1

The SFIP also provided coverage for Increased Cost of Compliance benefits up to $30,000.  ICC is the portion of the SFIP that pays an insured to comply with a state or local floodplain management law or ordinance affecting repair or reconstruction of a structure that suffers flood damage.  Compliance activities eligible for payment under the SFIP include elevation, floodproofing, relocation, and demolition.

After Bryars submitted a notice of loss, Imperial adjusted the claim.  During the adjustment process, Imperial determined that the proper amount of Bryars' claims were the policy limits of $162,000 under Coverage A and $10,000 for Coverage B; these amounts were paid to Bryars subject to the deductibles.

Bryars then submitted a claim for Increased Cost of Compliance in the amount of $30,000; he sought benefits under his SFIP's ICC provisions in order to elevate his house.[1]  Through an independent adjuster, Michael Guinn, Bryars provided to Imperial an estimate

---

[1] The City of New Orleans sent a letter to Bryars stating that the plaintiff's property may need to be elevated to comply with the base flood elevation; the letter set forth the requirements for the plaintiff's property as follows:

> Your property is located in an A4 zone with an elevation of 0.0, found on the NFIP rate map in community #225203; additionally the advisory flood elevation adopted under Ordinance 22354 MCS requires three feet above the curb, the higher of the two will apply.

2

prepared by Excalibur Construction to elevate the dwelling;[2] an elevation certificate dated March 30, 2009 prepared by Christopher Johnson, Professional Land Surveyor; a substantial damage letter from the City of New Orleans dated April 7, 2009; and a building permit issued by the City of New Orleans dated April 7, 2009.  On July 2, 2009 Imperial issued an advance payment to Bryars in the amount of $15,000 for ICC benefits.

The elevation requirements for Bryars' property in April 2009 and up through the time the building was elevated in April 2010 required that the dwelling be elevated to the higher of either: the base flood elevation of 0.00 as per the NFIP rate map for community #225203, the community in which Bryars' property was located; or, three feet above the curb as per the advisory flood elevation adopted by the City of New Orleans under Ordinance 22354 MCS.  The elevation certificate dated March 30, 2009, prepared by Charles Johnson, Professional Land Surveyor identified the elevation of the top of the curb to be -3.36 feet.  The elevation of the top of the bottom floor was identified as .46 feet prior to the elevation of the dwelling.  Nonetheless, the City issued a permit, and Imperial advanced $15,000 for elevation of the dwelling.  Excalibur then elevated the building.

After the building was elevated, Bryars (through the

---

[2] Bryars hired Excalibur Construction to elevate his house; Excalibur through its owner, Richard Moe, agreed to elevate the dwelling for the $30,000 ICC funds.

independent adjuster) submitted additional documents to Imperial, confirming completion of the dwelling's elevation. These documents included a new elevation certificate dated March 24, 2010 prepared again by Charles Johnson; a letter of completion from the City of New Orleans dated April 5, 2010, and a Proof of Loss for the total amount of the ICC claim, $30,000. The elevation certificate dated March 24, 2010 identified the new elevation for the top of the bottom floor to be +.66, an increase of .20 feet. Upon receipt and review by Imperial of the elevation certificates, the correspondence from the City of New Orleans, the NFIP Flood Insurance Manual, and City of New Orleans Ordinance, Imperial determined that the dwelling was in compliance prior to its elevation because the dwelling was above the base flood elevation, and more than three feet higher than the curb.[3]  Therefore, Imperial rejected the proof of loss, and denied payment of the remaining $15,000 in ICC benefits available under Bryars' SFIP.

After Imperial refused to pay the remaining ICC funds, on November 19, 2010 Bryars sued Imperial in state court, seeking damages for breach of the SFIP and also asserting various state law extra-contractual claims. Imperial removed the suit to this Court

---

[3]Imperial's review of the elevation certificate dated March 30, 2009 indicated that the elevation of the building at the top of the bottom floor was .46, which is greater than the base flood elevation of 0.00 and greater than three feet (36 inches) of the top of the curb, -3.36.

4

on January 13, 2011, invoking this Court's jurisdiction pursuant to 42 U.S.C. § 4072; that same day, Imperial filed its Answer and Counter-Claim, seeking what it deems to be the mistakenly paid $15,000 in U.S. Treasury funds.  It is Imperial's position that, because the dwelling's elevation was compliant prior to its elevation, the advance payment of $15,000 was issued in error. Imperial now seeks summary relief, submitting that Bryars is not entitled to recover any additional benefits because his dwelling did not qualify for Increased Cost of Compliance benefits; rather, Imperial suggests that it is undisputed that the dwelling was compliant with the state and local flood plain management law before the property was elevated.[4]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of

---

[4] On November 3, 2011 the Court ordered that all material facts presented in the defendant's statement of uncontested facts would be deemed admitted pursuant to Local Rule 56.2 because the plaintiff failed to comply with that rule's requirement that a separate and concise statement of material facts which the opponent contends are disputed must be submitted with the opposition papers.

fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  <u>See</u> <u>id</u>.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  <u>Id</u>. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  <u>Id</u>.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.

II.
*A.*

The NFIP is a creature of the U.S. Congress, administered by Federal Emergency Management Agency and the federal insurance

administration (FIA), and underwritten by the U.S. treasury. All flood loss claims presented under the NFIP are paid directly with U.S. Treasury funds, regardless of whether the policy was issued by the government directly, or by a WYO Program carrier. See 44 C.F.R. Pt. 62, App. A, Art. I(D)(1); see also Gowland v. Aetna Cas. & Surety Co., 143 F.3d 951, 955 (5th Cir. 1998).

A flood insurance policy issued under the NFIP is written by the federal government and called a Standard Flood Insurance Policy. A SFIP is a "regulation of [FEMA], stating the conditions under which federal flood insurance funds may be disbursed to eligible policyholders." Marseilles Homeowners Condo. Ass'n, Inc. v. Fidelity Nat'l Ins. Co., 542 F.3d 1053, 1054 (5th Cir. 2008) (per curiam). The front page of every SFIP expressly states that all flood insurance policies are subject to the terms of the National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. § 4001, et seq., and the regulations found in Title 44 of the Code of Federal Regulations. Claimants are charged with constructive knowledge of the provisions of their policy (the SFIP) and the NFIP, "regardless of actual knowledge of what is in the [r]egulations or of the hardship resulting from innocent ignorance." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947). Due to the statutory scheme of the NFIP and the fact that U.S. Treasury funds are at stake, strict adherence to the conditions for the payment of a claim is constitutionally required. Gowland v. Aetna, 143 F.3d

951, 953 (5th Cir. 1998).[5]

The SFIP provides coverage for "Increased Cost of Compliance" in addition to the building and contents limits, up to $30,000 in this case. Article III, Coverage D of the SFIP pays an insured "to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." 44 C.F.R. Pt. 61, App. A(1), Art. III(D)(1). Elevation is a compliance activity eligible for payment. Respecting eligibility for payment, Article III, Coverage D of the SFIP further provides:

> a. A structure covered under Coverage A – building Property sustaining a loss caused by a flood as defined by this policy must:
> ...
> (2) Be a structure that has had flood damage in which the cost to repair equals or exceeds 50 percent of the market value of the structure at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.
> B. This **Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the National Flood Insurance Program found in the Code of Federal Regulations at 44 C.F.R. 60.3.** We pay for compliance activities that exceed those standards under these conditions:
> ...

---

[5]Imperial is a WYO Program carrier authorized to issue the SFIP under its logo pursuant to the "Arrangement" between itself and FEMA, the text of which is found at 44 C.F.R. Pt. 62, App. A. As a matter of federal law, Imperial may not alter, amend, or waive any provision or condition of the SFIP. The sole authority is the FIA and the waiver must be express and in writing. To make payments not in strict compliance with the SFIP would be contrary to Congress' mandate and would violate the Appropriations Clause of the U.S. Constitution.

> (2) Elevation or flood proofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones with base flood elevations.  This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation.)(emphasis added)
> (3) Elevation or floodproofing above the base flood elevation to meet state or local "freeboard" requirements, i.e., that a structure must be elevated above the base flood elevation.
> ...
> D. This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g....
> (4) Conditions
> a. When a structure covered under Coverage A-Building Property sustains a loss caused by a flood, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws....

To determine whether a property is entitled to ICC benefits under SFIP Article III(D), the WYO Program Carrier is required to follow the regulations set forth by the NFIP and FEMA's Flood Insurance Manual.  The Manual sets forth the guidelines that WYO Program carriers must follow in order to apply FEMA's regulation; the Manual represents FEMA's interpretations of its own regulations, which, as distinct from its interpretation of statutes, is given "controlling weight."  Stinson v. United States, 508 U.S. 36 (1993).  As such, Imperial requests that the Court take

judicial notice of FEMA's Flood Insurance Manual, FEMA WYO Bulletins, published either in paper form or electronically on the internet, and found at www.fema.gov/business/nfip/manual.shtm.

*B.*

Here, it is undisputed that the State and local floodplain management law or ordinance in effect for the plaintiff's dwelling (which was located in Flood Zone A-4) prior to, and at the time of the elevation of the dwelling, required the dwelling to have a base flood elevation of 0.0, or the advisory flood elevation adopted under Ordinance 2354 MCS, which requires three feet (36 inches) above the curb, whichever is higher.

FEMA's Flood Insurance Manual provides what information is to be used gleaned from NFIP Elevation Certificates: "For buildings in A zones, elevations a, b, d, and e, should be measured at the top of the floor." The City of New Orleans required that in pier construction, "the lowest floor must be at least 36 inches above the highest point of the curb in front of the lot or site." The following elevations from the Elevation Certificate dated March 30, 2009 (pre-elevation) are undisputed: (1) per section D, the highest point of the curb is "-3.36" feet; (2) per section C2(a), the top of the bottom floor is ".46" feet. Thus, prior to the elevation being performed by Mr. Moe of Excalibur, the building was already more than three feet above the curb, as required by the City of New Orleans (and above the base flood elevation of 0.0) and, as such,

10

was in compliance before the house was elevated.[6]

Accordingly, while Bryars seeks to recover a second payment of $15,000 for ICC, Imperial contends that it is entitled to judgment as a matter of law dismissing the plaintiff's claims because the only relevant material facts are undisputed and show that the plaintiff's property was compliant before elevation.  In particular, Imperial notes that it is undisputed that the top of the bottom floor elevation prior to elevating the building was +.46 feet; thus, the building was more than three feet above the curb elevation of -3.36 feet prior to elevation and, therefore, the building was in compliance.  The Court agrees.[7]

Summary relief is warranted where, as here, the plaintiff seeks to recover ICC benefits, but the plaintiff's property was already in compliance with the applicable elevation regulations. Because the plaintiff's property does not qualify for ICC benefits per Article III, Coverage D, summary judgment dismissing the plaintiff's claim for additional ICC benefits is required.

The plaintiff attempts to conjure a factual dispute by

---

[6]Positive (+) .46 is greater than 0.0; thus, the dwelling was above the base flood elevation.  And, positive (+) .46 is (+)3.82 above the curb height of negative (-)3.36; thus, the dwelling was more than 3 feet above the top of the curb prior to being elevated.

[7]Positive (+) .46 is greater than 0.0; thus, the dwelling was above the base flood elevation.  And, positive (+) .46 is (+)3.82 above the curb height of negative (-)3.36; thus, the dwelling was more than 3 feet above the top of the curb prior to being elevated.

referring to conversations between Moe and Johnson and Moe and some unidentified City Code Department person, suggesting that Johnson told Moe that the house was not in compliance and that the some City employee also told Moe that the house was not at a compliant elevation level.  Even if the Court accepted this as competent summary judgment evidence, this falls short of undermining the record evidence that patently establishes, as a matter of fact, that the structure's elevation was, in fact, above compliant levels before it was elevated.  The plaintiff does not dispute this only crucial fact.  Indeed, there is no evidence, nor does the plaintiff suggest, that the house was not in compliance with the elevation requirements before it was elevated; he simply insists that some people mistakenly said so.  That a number of individuals perhaps miscalculated in assessing elevation requirements, or overlooked the meaningful numbers on the elevation certificate does not somehow give rise to a possibility of recovery on Bryars' part. His house was not eligible for ICC benefits; this is clear by reference to the elevation certificate dated March 30, 2009.  Any misreading of this document (apparently by all parties) does not give rise to a claim for SFIP benefits or in any way bind U.S. Treasury funds.  In short, the Court acknowledges the plaintiff's frustration, but there is no record evidence supporting recovery of

12

ICC benefits.[8]

As noted, due to the statutory scheme of the NFIP and the fact that U.S. Treasury funds are at stake, strict adherence to the conditions for the payment of a claim is constitutionally required. Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998). Accordingly, the defendant's for summary judgment is GRANTED.[9] The plaintiff's claims are dismissed with prejudice, and the defendant's

---

[8]To the extent Bryars seeks to invoke principles of detrimental reliance or estoppel to support recovery of ICC benefits, any such claim is defeated as a matter of law because state law extra-contractual claims are preempted and, in any event, ignorance of the law or detrimental reliance upon statements contrary to the federal law's requirements for participation in the NFIP is not actionable. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947).

[9]Imperial also submits that the plaintiff's state law based extra-contractual claims for penalties and attorney's fees are preempted and barred. The Court agrees. See Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005); Gallup v. Omaha Prop. & Cas. Ins. Co., 434 F.3d 341 (5th Cir. 2005). And, finally, the plaintiff's claim for interest is not permitted because his claims arise under the National Flood Insurance Program, warranting dismissal of this claim as well. In re Estate of Lee v. Nat'l Flood Ins. Program, 812 F.2d 253 (5th Cir. 1987); Newton v. Capital Assurance Co., Inc., 245 F.3d 1306 (11th Cir. 2001). The plaintiff has failed to oppose the portion of defendant's motion that addresses his state law claims and interest, and has failed to present any argument or evidence in support of his claims in this regard. "'A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other fact immaterial' and 'mandates the entry of summary judgment' for the moving party." United States ex rel. v. City of Houston, 523 F.3d 333, 337 (5th Cir. 2008) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Accordingly, summary relief in Imperial's favor is also appropriate to dispose of these remaining claims.

counterclaim is dismissed without prejudice.[10]

New Orleans, Louisiana, November 8, 2011

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10]The Court assumes that the defendant wishes to abandon its counterclaim, given its failure to set forth its entitlement to recovery in its moving papers, and its ultimate request that the Court "issue an Order dismissing this lawsuit in its entirety...."